UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------x

ROBERT NOVAK, d/b/a Pets Warehouse and
PetsWarehouse.com
   Plaintiff,

-against-

OVERTURE SERVICES, INC, GOOGLE, INC.
INNOVATIVE MARKETING SOLUTIONS, INC., d/b/a KANOODLE.COM,
NEEPS INC d/b/a THEFERRETSTORE.COM,
JOHN HOLDEFEHR d/b/a JUDGE-FOR-YOURSELF.COM
BIOCHEMICS, INC d/b/a DOCTORDOG.COM
   DEFENDANTS,

RECEIVED
DISTRICT COURT, E.D.N.Y.
IN CLERK'S OFFICE
LONG ISLAND COURTHOUSE
★ SEP 2 4 2002 ★
ENTERED

CV 02 5164

No. *CV 02*
(DRH)(WDW)

HURLEY, J.
WALL, M.J.

# COMPLAINT

1.    Plaintiff Robert Novak d/b/a Pets Warehouse and PetsWarehouse.com, ("PW"), Pro Se, complains of Defendants, upon knowledge with respect to itself and its own acts, and upon information and belief as to all other matters:,

### NATURE OF THE ACTION

2.    This is an action at law and in equity to remedy acts of, *inter alia*, (1) unfair competition under 15 U.S.C. § 1125(a); (2) trademark infringement under 15 U.S.C. § 1114(1); (3) trademark dilution under 15 U.S.C. § 1125(c); (4) trademark dilution under § 16.29 of the; (5); and (6) tortious interference with prospective economic advantage under the common law of the State of Texas; all caused by Defendant's unauthorized use and sale of PW's famous and distinctive PETS WAREHOUSE® mark.

1

## THE PARTIES

3. Plaintiff Robert Novak is an individual and resident of the State of New York with his principal place of business at 1550 Sunrise Hwy, Copiague, NY. PW is located and does business within this judicial district.

4. Defendant Innovative Marketing Solutions, Inc., doing business as Kanoodle.com ("Kanoodle"), is a corporation organized and existing under the laws of the State of New York with a place of business at 260 Creekside Drive, Suite 200, Amherst, New York 14228. Kanoodle is doing business in this judicial district.

5. Defendant Overture Services, Inc. ("Overture") is a corporation organized and existing under the laws of Delaware with a place of business at 74 N. Pasadena Ave. 3rd Floor, Pasadena, California 91103. Overture is doing business in this judicial district.

6. Defendant Google, Inc. ("GOG") is a corporation organized and existing under the laws of California with a place of business at 2400 Bayshore Parkway, Mountain View, CA 94043. Google is doing business in this judicial district.

7. Defendant NEEPS, Inc. d/b/a Theferretstore.com ("TFS") is a corporation organized and existing under the laws of Pennsylvania with a place of business at 4160 Bear Creek Blvd, Wilkes Barre, PA 18702. TFS is doing business in this judicial district.

8. Defendant Doctordog.com a division of Biochemics, Inc ("DD") is a corporation organized and existing under the laws of Massachusetts with a place of business at 99 Rosewood Ave., Suite 260, Danvers, MA 01923. DD is doing business in this judicial district.

9. Defendant John Holdefehr d/b/a judge-for-yourself.com. ("JFY") is an individual with a place of business at 185 Lakeshore Dr, Oakland, NJ 07436. JFY is doing business in this judicial district.

## JURISDICTION and Venue

10. This Court has jurisdiction over the subject matter of this action because this action arises under the Federal Trademark Act, 15 U.S.C. §§ 1051-1127, jurisdiction

being conferred in accordance with 15 U.S.C. § 1121 and 28 U.S.C. § 1331 and § 1338(a). Because this case is a civil action between citizens of different states in which the value of the matter in controversy exceeds the sum of Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs, subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1332. Supplemental jurisdiction over the causes of action under New York State law is proper as substantially related to those causes of action over which the court has original jurisdiction, pursuant to 28 U.S.C. § 1367. Venue is proper under 28 U.S.C. § 1391(b) in that Defendants are doing and transacting business within, and has committed the tortious acts complained of herein, in this judicial district.

## THE FACTS

### Pets Warehouse's Products

11. PW is a New York based national seller of pet products and live aquaria under the trademark PETS WAREHOUSE®. PW has spent years developing and marketing the PETS WAREHOUSE®. Brand to the public. PW enjoys a strong reputation in the trade and its PETS WAREHOUSE® products enjoy tremendous consumer recognition and goodwill.

12. Since at least as early as 1974, PW has continuously, marketed and sold Live animals and pet related products in interstate commerce under the PETS WAREHOUSE® mark.

13. Robert Novak is the owner of United States trademark registration and applications for the PETS WAREHOUSE® mark, including trademark Registration No. 2,600,670 for the mark PETS WAREHOUSE®, granted July 30, 2002 to Robert Novak, and properly licensed to PetsWarehouse.com to use the mark in interstate commerce.

14. The PETS WAREHOUSE® mark is inherently distinctive. Further, as a result of the long-term and continuous use of the PETS WAREHOUSE® mark, the commercial success in the sale of its pets and pet supplies offered under this mark, as well as the substantial advertising and promotional efforts made in connection therewith, the PETS WAREHOUSE® mark is famous and enjoys enormous secondary meaning. The trade and purchasing public have come to favorably know, recognize and identify the PETS WAREHOUSE® products and services as originating with the Mark. PW's PETS WAREHOUSE® mark has come to represent the very substantial and valuable

3

goodwill and reputation of PW in the pet industry.

### The Kanoodle Search Engine Service

15. Kanoodle operates a highly trafficked search engine on the Internet at its website at *kanoodle.com*. Kanoodle partners with other search engines, such as AskJeeves, Metacrawler.com, Mamma.com, Dogpile.com, CNET.com, TurboFind.com and others so that Kanoodle's search engine results appear on those websites. See Exhibit "A". Thus, the Kanoodle search engine results are widely available to and accessed by Internet users and it enjoys significant profits from the unlawful activities complained of herein.

### The Google Search Engine Service

16. Google operates the largest trafficked search engine on the Internet indexing 2 ½ billion web pages at its website at *Google.com*. Google uses their own software called PageRank™, a system for ranking web pages. Defendant claims search is an easy, honest and objective way to find high-quality websites with information relevant to your search. Google partners with other search engines, such as AskJeeves.com and America on Line among others. Google's "sponsored links" sells keywords to any advertiser willing to pay a fee for an ad along side the search results. See Exhibit "B". Thus, the Google search engine results are widely available to and accessed by Internet users and it enjoys significant profits from the unlawful activities complained of herein.

### The Overture Search Engine Service

17. Overture operates a major search engine on the Internet at its website at *overture.com*. According to Overture's website, it facilitated more than 338 million paid keywords or "click throughs" from its search engine results to paid advertisers in the third quarter of 2001. Through agreements with other Internet portals and search engines, including America Online, Terra Lycos, Altavista, Ask Jeeves/DirectHit, InfoSpace, CNET, EarthLink, Hotbot and other affiliate partners, Overture's search results reach approximately 69.8 million unique users. Therefore, the Overture search engine results are widely available to and accessed by Internet users and it enjoys significant profits from the unlawful activities complained of herein.

**Theferretstore.com**

18. TFS operates a website selling pets supplies in direct competition to the PetsWarehouse.com's Internet service. TFS competes for the same customer, a pet owner seeking supplies. In order to acquire the customers seeking PetsWarehouse.com, TFS using the PW Mark in its metatags and buying the keyword Pets Warehouse and colorable imitation or confusing similar variations of Pets Warehouse® thereby confusing, diverting and interfering with the sales revenue of PW. See Exhibit "C". TFS enjoys significant profits from the unlawful activities complained of herein.

**Biochemics, Inc d/b/a Doctordog.com**

19. DD operates a website selling pets supplies in direct competition to the PetsWarehouse.com's Internet service. DD competes for the same customer, a pet owner seeking supplies. In order to acquire the customers seeking PetsWarehouse.com, DD purchases the keyword Pets Warehouse and colorable imitation or confusing similar variations of Pets Warehouse® thereby confusing, diverting and interfering with the sales revenue of PW. See Exhibit "C". DD enjoys significant profits from the unlawful activities complained of herein. These activities are evidenced at search engines of Overture and Kanoodle, Google among others.

**Judge-for-yourself.com**

20. JFY operates a website selling keywords to pets suppliers which are in direct competition to the PetsWarehouse.com's Internet service. JFY customers competes for the same customer, a pet owner seeking supplies. In order to acquire the customers seeking PetsWarehouse.com, JFY purchases the keyword Pets Warehouse and colorable imitation or confusing similar variations of Pets Warehouse® thereby confusing, diverting and interfering with the sales revenue of PW. One example of its mis-leading advertisements "Want to see more sites on pets warehouse" on "Kanoodle" web site (Exhibit "A and "D") Defendant JFY enjoys significant profits from the unlawful activities complained of herein. These activities are evidenced at search engines of Kanoodle, among others.

**Technical Background**

21. Internet users who are searching for a specific company or product or other information, but who do not know a domain name at which it can be found, may utilize one of the numerous search engines available over the Internet to find a relevant website. Typically, a computer user makes use of a search engine by typing in a textual search term or phrase frequently a company's name or trademark — to be searched. The search engine then checks the search term(s) against its indexed database and displays a list of web pages (the "results" page) that presumably relate to the search term or phrase. Traditional search engines rank or list the results according to an algorithm or program that attempts to rank the results in decreasing order of relevance so that the most relevant search terms are ranked at the top of the results page where they are the first visible results. Internet users are accustomed to such relevancy ranking and there is a presumption by them that a search engine query using a company's trade names or marks will display the trademark or trade name owner's website among the more highly ranked search results. In fact, users performing search queries for a company's trade names and marks are clearly relying on the goodwill inherent in the name or mark, and are likely searching for the source of the goods corresponding to those names or marks.

22. Because Internet users expect the more relevant search results to be located at the top of the results page, they typically review, select and "click through" to only the top listed results and do not review lower ranked results. It is therefore important for websites to be highly ranked in a search result, otherwise Internet users will not see, and by extension will not visit, them.

**COUNT I: Defendant Google breach of Contract and Tortious Interference with contractual relations and prospective business relations**

23. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1- 22 of this Complaint as though fully set forth herein.

24. Within Google's search engine choices it offers access to the largest discussion Group online, containing more than 700 million posts since 1982.

25. According to Google's terms and conditions "It is Google's policy to respond to notices of alleged infringement.... applicable intellectual property laws, including the removal or disabling of access to material claimed to be subject of infringing activity.", further their terms of service lists certain limitations that posts to the discussion groups must refrain from such as defamation, abuse, harassment, surveys, posting of material that infringes trademark etc.

26. Plaintiff has contacted Google numerous times to remove such infringing or derogatory material. In fact this Court ordered that certain posts were to be deleted on consent of parties to an agreement in an unrelated case. Google has thus far declined to act or respond.

27. Google fails to abide by their contract of service, fiduciary responsibility and continues to display disparaging remarks tortiously interfering with PW's contractual relations and prospective business relations in a permanent form accessible to millions of Internet users.

28. Plaintiff demands Google remove any material deemed objectionable by Plaintiff. As a direct and proximate result of Google's breach of contract Plaintiff has been injured, in an amount to be determined at trial.

## COUNT II: Defendant's Kanoodle, Google and Overture Infringing Acts

29. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1- 28 of this Complaint as though fully set forth herein.

30. Taking advantage of user expectations and without care for third party trademark rights, Kanoodle, Google and Overture allows advertisers, including PW competitors, to buy their way to the top ranked results for search queries using "keywords." Under this business method, an advertiser pays a fee to Kanoodle, Google and Overture. In return, Kanoodle, Google and Overture ranks the website designated by the advertiser at or near the top of the results page in response to search queries based on or incorporating the particular keywords the entity purchased. This practice is referred to as paid-placement or *"Pay for Clicks"*. In addition to paying an up-front fee in

return for the placement, the advertiser pays Kanoodle, Google and Overture a fixed amount (*e.g.*, .01 to 50.00 dollars) each time a user conducts a search and then clicks through to the advertiser's website from the Kanoodle, Google and Overture results page. Where there are multiple purchasers of the same keyword, Kanoodle, Google and Overture lists the websites according to price, with those advertisers that agree to pay more receiving a higher rank than those who pay less. See Exhibit B. Accordingly, Kanoodle, Google and Overture profits, and in fact derives significant revenues, from the sale of keywords, including PW's trademarks, as described in further detail below.

31. In a willful attempt to mislead users regarding its business practices, Kanoodle, Google and Overture advertises and promotes its search engine to potential users as providing superior search results that are more relevant than the search results provided by traditional search engines because it is "designed specifically to direct [users] to the products or information they are seeking" and therefore provides more relevant results than other search engines. Kanoodle, Google and Overture exercises substantial control over search engine results and cannot therefore complain it was unaware of the acts complained of herein.

32. Notwithstanding Kanoodle, Google's and Overture self-serving interests, it is only after listing all the websites belonging to those advertisers that purchased keyword placements that the Kanoodle, Google and Overture search engine displays traditionally ranked, un-purchased search engine results. Kanoodle, Google and Overture does not explicitly or fairly advise users of its search engine that the top ranked results have been purchased through its keyword bid-for-location service or that more relevant websites may be ranked further down (or not at all) simply because they did not pay a fee to Kanoodle, Google or Overture.

33. Notwithstanding PW's exclusive right to control the use of its famous PETS WAREHOUSE® mark, Kanoodle, Google and Overture actively assists competitors of PW in what is best described as a "bait and switch" of PW's actual and potential customers. In a typical scenario, a consumer looking for PETS WAREHOUSE® products logs onto Kanoodle, Google.com or Overture and enters "PETS WAREHOUSE" as his search term. Kanoodle, Google and Overture then retrieves and displays the websites of several competitors of PW. The consumer, assuming he has found the legitimate PETS WAREHOUSE® site, then clicks on one of the linked websites, only to

8

arrive at a competitor's site. The consumer may not even realize that he is not at the PW website and orders a different product.

34. Kanoodle, Google and Overture profits from this arrangement by improperly and unlawfully selling the right to use PW's famous PETS WAREHOUSE® mark—or confusingly similar terms such as PET WAREHOUSE as a keyword linking to websites that are not legitimately related to or entitled to use the PETS WAREHOUSE® mark in order to allow PW competitors to be more highly ranked on Overture's and Kanoodle, Google's search engine results page. See Exhibit C.

35. For example, a September 17, 2002 search of the term "PETS WAREHOUSE" on the Kanoodle search engine generated a display page in which the first six results are competitors of PW who have paid to have their websites ranked ahead of PW's website in response to a search of PW's famous PETS WAREHOUSE® trademark. See Exhibit C. Conversely, PW's website, which prominently uses the term PETS WAREHOUSE and is the only authorized source of the PETS WAREHOUSE® system, is not even ranked among the first 30 search results by the Kanoodle search engine.

36. Causing even more injury to PW, the website descriptions generated by Kanoodle in response to search queries based on the PETS WAREHOUSE keyword are misleading, misdescriptive and confusing because they do not fairly or adequately disclose that those websites are competitors of and not related to PW, and do not offer or sell PW's PETS WAREHOUSE® products. See Exhibit D. This threatens to confuse and actually does divert consumers, who were actually looking for PW's website, to the competing websites.

37. Accordingly, Overture and Kanoodle, Google's actions are knowingly and willfully and it is directly, contributorily, and vicariously liable for the resulting acts of unfair competition, trademark infringement, trademark dilution misappropriation, deceptive trade practices, unjust enrichment and tortious interference with prospective economic advantage.

**COUNT III: Defendant's Theferretstore.com, Doctordog.com, and judge-for-yourself.com Infringing Acts**

38. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1- 37 of this Complaint as though fully set forth herein.

39. TFS, DD and JFY have purchased keywords from numerous search engines including but not limited to Overture.com and Kanoodle, Google.com. These keywords are in fact the registered and famous PETS WAREHOUSE® mark —or confusingly similar terms colorable imitation or variation thereof.

## COUNT IV: UNFAIR COMPETITION as to all DEFENDANTS

40. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1- 39 of this Complaint as though fully set forth herein.

41. This cause of action arises under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

42. Defendant's use and sale of the mark PETS WAREHOUSE® as alleged hereinabove is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendant's advertisers with PW or as to the origin, sponsorship, or approval of the products of Defendant's advertisers by PW, and misrepresents the nature, characteristics, and qualities of these products, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

43. PW is without an adequate remedy at law because Defendant's unfair competition has caused great and irreparable injury to PW, and unless said acts are enjoined by this Court, they will continue and PW will continue to suffer great and irreparable injury.

44. Defendant's acts of unfair competition have further caused PW to sustain monetary damages, loss, and injury in an amount to be determined at the trial of this action, which amount PW believes, and therefore alleges, to be not less than one million dollars ($1,000,000.00).

## COUNT V: TRADEMARK INFRINGEMENT as to all DEFENDANTS

45. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1-44 of this Complaint as though fully set forth herein.

46. This cause of action arises under Section 32 of the Lanham Act, 15 U.S.C. §1114.

47. Defendant's use and sale of the mark PETS WAREHOUSE® as alleged hereinabove is likely to cause confusion, mistake, or deception as to the source, sponsorship, or approval of the products of Defendant's advertisers in that others are likely to believe that Defendant's advertisers are in some way legitimately connected with, sponsored or licensed by, or otherwise related to PW.

48. Defendant's use and sale of the PETS WAREHOUSE® mark was made with actual or constructive knowledge of PW's rights in the PETS WAREHOUSE® mark.

49. Defendant's use and sale of the PETS WAREHOUSE® mark is without PW's consent or permission.

50. Defendant's use and sale of the PETS WAREHOUSE® mark constitutes trademark infringement under the Lanham Act, 15 U.S.C. §1114(1).

51. PW is without an adequate remedy at law because Defendant's trademark infringement has caused great and irreparable injury to PW, and unless said acts are enjoined by this Court, they will continue and PW will continue to suffer great and irreparable injury.

52. Defendant's acts of trademark infringement have further caused PW to sustain monetary damages, loss, and injury in an amount to be determined at the trial of this action, which amount PW believes, and therefore alleges, to be not less than one million dollars ($1,000,000.00).

## COUNT VI: TRADEMARK DILUTION as to all DEFENDANTS

53. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1-52 of this Complaint as though fully set forth herein.

54. This cause of action arises under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

55. By virtue of PW'S extensive use, sales, advertising, and promotion of goods and services under the mark PETS WAREHOUSE® said mark has become famous throughout the United States.

56. Defendant's use and sale of the PETS WAREHOUSE® mark as alleged hereinabove constitutes dilution of the distinctive quality of the PETS WAREHOUSE® mark in violation of the Federal Trademark Dilution Act of 1995, Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

57. PW is without an adequate remedy at law because Defendant's acts of dilution have caused great and irreparable injury to PW, and unless said acts are enjoined by this Court, they will continue and PW will continue to suffer great and irreparable injury.

58. Defendant has willfully diluted PW's famous PETS WAREHOUSE® mark in violation of 15 U.S.C. § 1125(c), and PW is therefore entitled to the remedies set forth in 15 U.S.C. § 1117(a).

## COUNT VII: TRADEMARK DILUTION as to all DEFENDANTS

59. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1-58 of this Complaint as though fully set forth herein.

60. Defendant's use of the Pet Warehouse® name in connection with the sale of keywords and placement misrepresentations as to the source, has diluted, and will continue to dilute, the distinctive quality of Plaintiff's Pets Warehouse® mark lessening the consumers capacity to identify Plaintiff's Pets Warehouse® the products offered and by tarnishing such products in violation of section 43 (c) of the Lanham Act, 15 U.S.C. section 1125 (c).

61. The competitive proximity, the defendants DD, TFS and JFY compete for much of the same audience seeking pet owners. However when a user goes online seeking the Plaintiff's goods and services the initial interest is lost when they were looking for plaintiff's site which sells such animals and pet related products.

62. This confusion dubbed " initial interest confusion" see Brookfield Communication v. Westcoast Entertainment Co 174 F. 3rd 1036 (9th Cir 1999) diverting people searching the Internet looking for plaintiff's goods and services benefiting Defendants from the goodwill that Robert Novak developed in his Pets Warehouse® and web site.

63. Blurring by Defendants use of the plaintiff's mark and similar marks to identify Defendants goods and services, our mark will then lose its ability to serve as a unique identifier of its goods and services thereby diluting Pets Warehouse® valuable Mark.

64. Defendants actual prior awareness of our mark to identify itself raises the finding of bad faith, the outright copying, use and sale of the mark in Defendants websites and links is tinged with obvious bad faith.

12

65. Defendants' acts complained of herein have damaged and may continue to damage plaintiff's mark irreparably. Plaintiff has no adequate remedy at law for these wrongs and injuries. The damage to plaintiff's mark includes harm to its goodwill and reputation in the marketplace for which money cannot compensate. Plaintiff is, therefore, entitled to a permanent injunction restraining and enjoining defendants and their agents, servants, and employees, and all persons acting there under, in concert therewith or on their behalf, from using the Pets Warehouse® mark or any colorable imitation or variation thereof.

66. PW is without an adequate remedy at law because Defendant's acts set forth herein are causing great and irreparable damage to PW and will continue to damage PW unless restrained by this Court.

## COUNT VIII: TRADEMARK INFRINGEMENT, UNFAIR COMPETITION AND MISAPPROPRIATION as to all DEFENDANTS

67. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1- 66 of this Complaint as though fully set forth herein.

68. This claim is to remedy acts of trademark infringement, unfair competition, and misappropriation under the common law of the State of New York.

69. Defendant's use and sale of the PETS WAREHOUSE® mark as alleged hereinabove is likely to cause confusion between Defendant's advertisers and/or their products and PW and/or its products; and such use misappropriates and trades upon the fine reputation and goodwill of PW in the PETS WAREHOUSE® mark, thereby injuring that reputation and goodwill; and unjustly diverts from PW to Defendants the benefits arising from their actions.

70. Defendant's unlawful activities constitute trademark infringement, unfair competition, and misappropriation by common law.

71. Defendant's acts of trademark infringement, unfair competition, and misappropriation have caused PW to sustain monetary damage, loss and injury, in an amount to be determined at the time of trial, which amount PW believes, and therefore alleges, to be not less than one million dollars ($1,000,000.00).

72. Defendant's have engaged and continues to engage in this activity knowingly and willfully, so as to justify the assessment of increased and punitive damages against them, in an amount to be determined at the time of trial.

73. Defendant's acts of trademark infringement, unfair competition and misappropriation, unless enjoined by this Court, will continue to cause PW to sustain irreparable damage, loss and injury, for which PW has no adequate remedy at law.

## COUNT IX: TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE as to all DEFENDANTS

74. PW repeats and realleges each and every allegation contained in paragraphs 1-73 of this Complaint as though fully set forth herein.

75. This claim is to remedy acts of tortious interference with prospective business advantage under the common law of, *inter alia*, the State of New York.

76. Defendant's aforesaid acts constitute intentional interference with PW's business relations with its customers and/or potential customers for the purpose of causing injury to PW and its business and for Defendant's commercial gain.

77. Defendant's acts of tortious interference with prospective business relations have caused PW to sustain monetary damage, loss and injury, in an amount to be determined at the time of trial, which amount PW believes, and therefore alleges, to be not less than five million dollars ($ 5,000,000.00).

78. Defendant has engaged and continues to engage in this activity knowingly and willfully.

79. Defendant's acts of tortious interference with prospective business advantage, unless enjoined by this Court, will continue to cause PW to sustain irreparable damage, loss and injury, for which PW has no adequate remedy at law.

## COUNT X: Common Law – New York - Unfair Competition and Unjust Enrichment as to all Defendants

PLAINTIFF repeats and re-alleges the allegations contained in paragraphs 1 -79 above as if more fully set forth herein.

80. The use by the defendants of the Mark or similar marks to the Plaintiff's have caused actual confusion which has caused Plaintiff's customers to purchase products

14

from or through the defendants at the Plaintiffs expense in bad faith, unjustly enriching the defendants. The confusion caused by the defendants led the public to believe that the defendants were or directing to the Plaintiff, or affiliated with same.

81. Defendant's bad faith misappropriations of plaintiff's labors and expenditures deceived purchasers by confusing the origin of the goods.

### COUNT XI: Trademark Infringement –False Designation of Origin
### 15 U.S.C. Section 1125 (a)(New York General Business Law Sec 360-1)

82. Plaintiff repeats and realleges the allegations contained in Paragraphs 1 -81 above as if set forth fully herein.

83. Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof...which...is likely to cause confusion, or to cause mistake, or to deceive... as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person...shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act. 15 U.S.C. section 1125 (a)(1).

84. Defendants have infringed the Pets Warehouse® mark and/or induced infringement of the Pets Warehouse® mark in violation of 15 U.S.C. section 1125.

85. Plaintiff and his licensees have developed the strength of the Plaintiff's mark (including the goodwill and reputation) as the source of live aquaria pets and pet supplies and related products over the last twenty-seven (27) years.

86. Defendant TFS through its petwarehouse.com (html is the programming code behind the actual pages being displayed on the web) containing the words Pets Warehouse and similar words in their meta-tags.

87. Defendant TFS with full prior knowledge of the Plaintiff's right to the mark Pets Warehouse®, willfully Defendants intentionally copied the Plaintiff's mark to capitalize on Plaintiff's reputation and good will and increased the confusion between the defendant's and the infringers products. Defendant's infringement and tarnishment on the Plaintiff's longstanding public recognition and reputation of its mark is in bad faith and in direct violation of the statute.

88. It was precisely the recognizability of the Pets Warehouse® mark that led DD, TFS and JFY to adopt the mark Petswarehouse®. Defendants willful conduct intended to reap the benefit of our mark, however since petswarehouse.com 's site was acknowledged as the third most visited site in this channel of trade, DD TFS and JFY's calculated multiple bad faith actions continue to infringe and dilute our mark.

89. Defendant's acts complained of herein have damaged and may continue to damage plaintiff irreparably. Plaintiff has no adequate remedy at law for these wrongs and injuries. The damage to plaintiff includes harm to goodwill and reputation in the marketplace for which money cannot be compensated. Plaintiff is, therefore entitled to a permanent injunction restraining and enjoining defendant and their agents, servants, and employees, and all persons acting there under, in concert therewith or on their behalf, from using the mark Pet Warehouse or any colorable imitation or variation thereof.

90. Because defendants have willfully intended to cause dilution of the famous PetsWarehouse® mark, plaintiff is entitled to recover all damages sustained as a result of defendant's unlawful conduct, including (1) defendant's profits, (2) Plaintiff's damages, (3) the costs of the suit, and (4) reasonable attorneys' fees. (5) turn over the domain names that infringe on plaintiff's mark.

## COUNT XII: Deceptive Acts and Practices

91. Plaintiff repeats and realleges the allegations contained in Paragraphs 1-90 above as if set forth fully herein.

92. The acts of Defendants as described above constitute deceptive acts and practices in violation of N.Y. Gen. Bus. Law §§ 349-350.

93. COUNT XIII: Dilution Under State Law

94. Plaintiff repeats and realleges the allegations contained in Paragraphs 1-80 above as if set forth fully herein.

95. The acts of Defendants as described above are likely to dilute and detract from the distinctiveness of PWs' trademark, with consequent damage to PW and the business and goodwill symbolized by said trademark, in volition of the New York Anti-Dilution Statue N.Y. Gen. Bus. Law § 368d.

## REQUEST FOR JURY TRIAL

Robert Novak hereby makes demand for a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure as to all issues herein so triable.

**WHEREFORE**, Plaintiff Robert Novak respectfully requests judgment against Defendants, and each of them, jointly and severally, as follows:

1. Defendants be held liable under each claim for relief set forth in this Complaint.
2. Defendants, their agents, servants, employees, and attorneys, and all other persons in active concert or participation with them, be enjoined from using or selling PETS WAREHOUSE (however spelled or punctuated, whether capitalized, abbreviated, singular or plural, printed or stylized, whether as one word or two, whether used alone or in combination with any word(s), punctuation or symbol(s), and whether used in caption, text, orally or otherwise), or any other reproduction, counterfeit, copy, colorable imitation or confusingly similar variation of PETS WAREHOUSE, as a trademark or service mark, trade name or domain name, or in the advertising, distribution, sale, or offering for sale of Defendant's products and/or services.
3. Defendants be ordered to cancel all "sponsored links" and any other arrangements with any Internet search engine, including Google, tied to the PETS WAREHOUSE® mark or any mark of PW or any mark or words similar thereto.
4. Defendants be required to pay to Robert Novak all damages PW has suffered by reason of Defendant's unlawful acts set forth herein, together with legal interest from the date of accrual thereof, which amount Robert Novak believes, and therefore alleges, to be not less than five million dollars ($5,000,000.00).
5. Defendants be required to account for and pay treble damages to Robert Novak all profits wrongfully derived by Defendant through its unlawful acts set forth herein, together with legal interest from the date of accrual thereof.
6. Defendants be required to pay to Robert Novak punitive damages in an amount not less than one million dollars ($1,000,000.00), as determined by this Court, for Defendant's deliberate and willful trademark infringement and unfair competition.

17

7. Defendants be required to pay to Robert Novak its reasonable attorneys' fees and disbursements incurred herein, pursuant to 15 U.S.C. § 1117 and the equity powers of this Court.

8. Defendants be required to pay to Robert Novak the costs of this action.

9. Defendants be required to pay Robert Novak statutory damages.

10. This Court award PW such other and further relief, as this Court deems just and equitable.

Dated September 23, 2002
Copiague New York
631.789.5400
F 631.789.9340

Respectfully submitted,

Robert Novak